Alfred G. Rava, SBN 188318
RAVA LAW FIRM
3667 Voltaire Street
San Diego, CA 92106
Phone: 619-238-1993
Email: alrava@ravalaw.com

Attorney for Plaintiff Steve Frye
and the Putative Class

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE FRYE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>LHO SAN DIEGO ONE LESSEE, INC. d/b/a HILTON SAN DIEGO GASLAMP QUARTER; DAVIDSON HOTEL COMPANY LLC; STRIPE, INC.; 2SPICY ENTERTAINMENT GMBH; and DOES 1 through 20, Inclusive,<br><br>Defendants. | Case No. '25CV2633 H BJW<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:**<br><br>**1. Violation of Civil Code § 51 (Codification of the Unruh Civil Rights Act);**<br>**2. Violation of Civil Code § 51.5;**<br>**3. Violation of Civil Code § 51.6 (Codification of the Gender Tax Repeal Act of 1995); and**<br>**4. Violation of Business & Professions Code § 125.6** |

Plaintiff Steve Frye alleges the following:

## INTRODUCTION

1. Forty years ago, the California Supreme Court, in the Ladies' Night case of *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, ruled that sex-based pricing practices (often referred to as "Ladies' Night" or "Ladies' Day" promotions) violate the Unruh Civil Rights Act (codified as California Civil Code Section 51). *Koire* held, "The scope of

the statute clearly is not limited to exclusionary practices. The Legislature's choice of terms evidences concern not only with access to business establishments, but with equal treatment of patrons in all aspects of the business." *Koire* at 29. "Public policy in California strongly supports eradication of discrimination based on sex. The Unruh Act expressly prohibits sex discrimination by business enterprises." *Id*. at 37.

2. In 2007, *Koire* was later affirmed by the California Supreme Court in yet another Ladies' Night case about a business treating customers unequally based on their sex by charging male and female customers different prices for the exact same thing based solely on the customers' sex – a nightclub's sex-based cover charges. In that 2007 Ladies' Night case, *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, the California Supreme Court unanimously ruled that men who were charged a higher price than women to be admitted into a business establishment did not have to first confront the discriminating business and affirmatively assert their right to equal treatment in order to have standing to sue for violations of Civil Code sections 51, 51.5, and 51.6. The attorney for this present "Ladies' Night Out" case had the privilege of representing the prevailing plaintiffs/appellants at the California Supreme Court in *Angelucci.*

3. In this present case, Defendants LHO San Diego One Lessee, Inc. – doing business as the Hilton San Diego Gaslamp Quarter, Davidson Hotel Company LLC; Stripe, Inc., and 2Spicy Entertainment GmbH created, marketed, hosted, managed, invoiced and/or employed and/or at least aided a recurring, Thursday night Ladies' Night-type sex-based pricing promotion entitled "Ladies' Night Out," at the Hilton San Diego Gaslamp Quarter hotel ("Hotel") located in downtown San Diego. During Defendants' Thursday night Ladies' Night Out event, male and nonbinary patrons were required to pay and did pay $10 more for the same type of meal for which female patrons were charged $10 less – based solely on the patrons' sex. The Hotel's website for the Ladies' Night Out event or promotion openly and boldly advertised Ladies' Night Out as follows:

**Thursday: Ladies' Night Out**

Sip, laugh, and indulge. Thursdays are better with friends—and $10 off select menus for your Le Petit Chef adventure.

See: Exhibit 1, entitled "LADIESNIGHT," with the following sex-based pricing listing:

**LADIESNIGHT**

**($179.00 +Service charge 18% + tax ⊖ 1 ⊕ 7.75% per person) - LE GRAND CHEF** _(more)_

**($169.00 +Service charge 18% + tax ⊖ 0 ⊕ 7.75% per person) - LE GRAND CHEF (LADIES SPECIAL)** _(more)_

4. During Defendants' Ladies' Night Out, male and nonbinary patrons were required to pay and did pay $10.00 more for their LE GRAND CHEF meal than female patrons paid, including wealthy female patrons, were allowed to pay for their same type of LE GRAND CHEF meal, with the $10.00 price difference, $179.00 (+Service charge 18% + tax 7.75% per person) for males and nonbinary persons vs. $169.00 (+Service charge 18% + tax 7.75% per person) based solely on the patrons' sex. Defendants' price disparity for the same type of LE GRAND CHEF meals has been based on the patrons' sex, just as promised in the Hotel's advertisements for the Ladies' Night Out.

5. For example, on Thursday night, August 7, 2025, looking for a safe and secure place to have dinner in San Diego's Gaslamp District with his fiancé, Plaintiff Steve Frye patronized Defendants' Ladies' Night Out at the Hotel with his female fiancé. During Mr. Frye's patronage of this Ladies' Night Out, Mr. Frye ordered and paid for a so-called LE GRAND CHEF meal for which he was required to pay and did pay $179 (excluding 18% service and 7.75% tax per person), while his female fiancé and other female patrons, including wealthy female patrons, who ordered the same type of LE GRAND CHEF meal that evening, paid only $169,00 (excluding 18% service and 7.75% tax per person). The $10.00 price difference between Mr. Frye's LE GRAND

CHEF meal and his female fiancé and other female patrons' LE GRAND CHEF meal that evening was based solely on the patrons' sex, just like the Hotel's website's advertisements touted for a man and woman's LE GRAND CHEF meals during Defendants' Ladies' Night Out.

6. Defendants' Thursday Ladies' Night Out was part of a weekly Tuesday through Sunday dining experience entitled "Le Petit Chef," which the Hotel's website described as follows:

> Join us on an immersive culinary adventure that comes alive with 3-dimensional visual mappings. Beginning on **January 22nd 2025,** Le Petit Chef will appear in **San Diego** for the first time at the **Hilton San Diego Gaslamp Quarter**. He will transport you to his animated world. Immerse yourself in a vibrant 3D-animated experience as you follow his quest to gather the finest ingredients and witness the expert preparation of your exquisite dinner.
>
> . . .
>
> "Le Petit Chef" in **San Diego** is a cooperation between **Hilton San Diego Gaslamp Quarter** and **2Spicy Entertainment GmbH**.

(Emphasis in original.) See https://lepetitchef.com/san-diego/ (last visited on September 30, 2025).

7. This class action complaint is filed on behalf of all male and nonbinary patrons who purchased an adult's LE GRAND CHEF meal during any and all of Defendants' Ladies' Night Out events at the Hotel, because Defendants' Ladies' Night Out denied equal accommodations, advantages, facilities, privileges, or services to and discriminated against all male and nonbinary patrons based solely on their sex or gender. Regarding nonbinary patrons, the State of California, specifically at least the California Department of Motor Vehicles, recognizes three genders: (1) male, (2)

female, and (3) nonbinary. See, e.g., www.dmv.ca.gov/portal/file/19olin03-pdf/ (entitled “Occupational Licensing Industry News OLIN 2019-03 Nonbinary Gender Designation”).

## PARTIES

8. At all times relevant hereto, Plaintiff Steve Frye has been an adult male and a California citizen and resident. On Thursday night, August 7, 2025, Mr. Frye, wanting to enjoy dinner in a safe and secure restaurant with his fiancé in San Diego’s Gaslamp District, patronized Defendants’ Ladies’ Night Out with his female fiancé. During Mr. Frye and his female fiancé’s patronage of this Ladies’ Night Out at the Hotel, Mr. Frye, ordered and paid for a so-called LE GRAND CHEF meal for which Mr. Frye was required to pay and did pay $179.00 (excluding 18% service and 7.75% tax per person) while his female fiancé and other female patrons, including wealthy female patrons, who ordered the same type of LE GRAND CHEF meal that evening paid only $169,00 (excluding 18% service and 7.75% tax per person) for the same type of LE GRAND CHEF meal. The $10.00 price difference between Mr. Frye’s LE GRAND CHEF meal and his female fiancé and other female patrons’ LE GRAND CHEF meal that evening was based solely on the patrons’ sex, just like the Hotel’s website’s advertisements touted for a man and woman’s LE GRAND CHEF meal during Defendants’ Ladies’ Night Out.

9. On information and belief, at all times relevant hereto, Defendant LHO San Diego One Lessee, Inc. (“LHO San Diego”) has been a business establishment, a Delaware corporation doing business as the Hilton San Diego Gaslamp Quarter hotel (“Hotel”) located in downtown San Diego, California. Beginning in January 2025, LHO San Diego’s Hotel created, marketed, hosted, and/or employed and/or at least aided a weekly event at the Hotel entitled “Ladies’ Night Out” at which Plaintiff and other male and nonbinary patrons were required to pay and did pay $10.00 more for their LE GRAND CHEF meals than female patrons paid for their LE GRAND CHEF meals, with the price

difference based on the patrons' sex or gender. LHO San Diego holds or owns California Alcoholic Beverage Contral ("ABC") License Number 421719, which is for ABC license types "47 - On-Sale General Eating Place," "58 - Caterer Permit," "68 – Portable Bar," and "77 – Event Permit. The State of California requires all State of California licensees, such ABC-licensed LHO San Diego, to comply with California Business and Professions Code section 125.6(a)(1), which reads as follows:

> With regard to an applicant, every person who holds a license under the provisions of this code is subject to disciplinary action under the disciplinary provisions of this code applicable to that person if, because of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code, the person refuses to perform the licensed activity or aids or incites the refusal to perform that licensed activity by another licensee, or if, because of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code, the person makes any discrimination, or restriction in the performance of the licensed activity.

10. On information and belief, at all times relevant hereto, Defendant Davidson Hotels Company LLC, ("Davidson") has been a Delaware corporation that has been the manager of Defendant LHO San Diego's Hilton San Diego Gaslamp Quarter hotel. Beginning in January 2025, and continuing through at least September 18, 2025, Davidson created, marketed, hosted, managed, and employed and/or at least aided a weekly event at the Hotel entitled "Ladies' Night Out" at which Plaintiff and other male and nonbinary patrons were required to pay and did pay $10.00 more for their LE GRAND CHEF meals than female patrons paid for their same type of LE GRAND CHEF meals, with the price disparity based on the patrons' sex or gender.

11. On information and belief, at all times relevant hereto, Defendant Stripe, Inc. ("Stripe") has been a Delaware corporation. Beginning in January 2025, and continuing through at least September 18, 2025, Stripe participated in or and/or at least aided a weekly event at the Hotel entitled "Ladies' Night Out" at which Plaintiff and other male

and nonbinary patrons were required to pay and did pay $10.00 more for their LE GRAND CHEF meals than female patrons paid for their same tyle of LE GRAND CHEF meals, with the price difference based on the patrons' sex or gender. Stripe's liability is based at least in part on Defendants contracting with Stripe to accept Plaintiffs and/or other putative class members' online or in-person payments for their LE GRAND CHEF sex-based priced meals, much like if a similar payment processing company processed payments for services or goods that required consumers to pay different prices for the same things based on the consumers' race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status.

12. On information and belief, at all times relevant hereto, Defendant 2Spicy Entertainment GmbH ("2Spicy") has been a business establishment of unknown form based Sulzbach, Germany, and not registered with the California Secretary of State. Beginning in January 2025, and continuing through at least September 29, 2025, 2Spicy created, marketed, hosted, managed, invoiced or at least processed patrons' payments, and/or employed and/or at least aided a dining experience at the Hotel entitled "Le Petit Chef" that on Thursday nights was promoted as "Ladies' Night Out" at which Plaintiff and other male and nonbinary patrons were required to pay and did pay $10.00 more for their LE GRAND CHEF meals than female patrons paid for their same type of LE GRAND CHEF meals, with the price disparity based on the patrons' sex or gender. 2Spicy's website, https://2spicy.com/lpc.php, provides the below about "Le Petit Chef."

The first-of-its-kind multi-sensory, fun dining experience.

Le Petit Chef is just 58 mm tall, and he will not grow any taller. He was born in April 2015 at Skullmapping Studios in Belgium. By using a profound artistic knowledge, and combining it with the latest technology, Skullmapping tells stories with stunning bespoke visuals, such as “Le Petit Chef”. The technology is called 3D Projection Mapping.
Book Now / More Information

You want to run this unique Cinema & Fun Dining experience in your hotel or restaurant? Contact us

13. The true names and capacities of Does 1 through 20 are unknown to Plaintiff. When their true names and capacities are learned, Plaintiff will amend this complaint accordingly. Plaintiff is informed and believes, and on that basis alleges, each fictitiously named defendant is responsible in some way for and at least aided the occurrences herein alleged, and those defendants proximately caused Plaintiffs' damages. Each reference in this complaint to "Defendants," "Defendant," or any specifically named defendant refers to all defendants sued under fictitious names.

14. Unless otherwise alleged, whenever reference is made in this complaint to any act of "defendant," "defendants," or to a specifically named defendant, such allegation shall mean that each defendant acted individually and jointly with the other defendant named in the complaint.

15. Unless otherwise alleged, whenever reference is made in this complaint to any act or omission of any corporate or business defendant, such allegation shall mean that such corporation or other business defendant committed or omitted to act as in this complaint through its officers, members, directors, stockholders, employees, agents, and/or representatives while they were acting within the actual or apparent scope of their authority.

16. At all relevant times alleged herein, each defendant has been each the agent, alter-ego, representative, partner, joint venturer, employee, or assistant of the other defendants and has acted within the course and scope of said agency, alter-ego, representation, partnership, or joint venture with the knowledge, notification, authorization, and consent of each of the other defendants.

## NATURE AND BASIS OF CLAIMS

17. This lawsuit is about Defendants' weekly Thursday Ladies' Night Out during which Plaintiff and male and nonbinary patrons were required to pay and did pay $10.00 more for their LE GRAND CHEF meals than female patrons paid for their same type of LE GRAND CHEF meals, with the price difference based on the patrons' sex or gender.

18. Defendants' weekly Ladies' Night Out was arbitrary, invidious, unlawful, and unreasonable, and intentionally denied male, female, and nonbinary patrons equal accommodations, advantages, facilities, privileges, or services based on their sex, which is prohibited by Civil Code sections 51, 51.5, and 51.6, as well as prohibited by California Business & Professions Code section 125.6.

19. Despite the many State of California anti-discrimination statutes, two unanimous California Supreme Court opinions, and the many rules, publications, and actions by the California Civil Rights Department, California Department of Alcoholic Beverage Control, and other State agencies that prohibit businesses operating in California from treating consumers unequally and discriminating against them based on the their sex, and specifically outlaw Ladies' Night sex-based pricing promotions and practices, Defendants have had the temerity to create, market, host, manage, employ, and/or at least aid their weekly Ladies' Night Out at the Hotel that has charged consumers different prices for their LE GRAND CHEF meals based on the patrons' sex or gender.

20. In addition to the above two California Supreme Court Ladies' Night or Ladies' Day cases, *Koire* and *Angelucci*, which ruled against sex-based pricing promotions, and practices, there is a significant body of easily-obtained, publicly-available information putting business establishments on notice that such discriminatory conduct is illegal in the Golden State. The California Civil Rights Department (formerly the Department of Fair Employment and Housing), the State agency charged with preventing unlawful discrimination against consumers by businesses operating in California, has published several fact sheets specifically warning businesses about the unlawfulness of treating customers unequally based on their sex – specifically, so-called "Ladies' Night" events or promotions. See, e.g.,
https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2020/03/DFEH_UnruhPamphlet.pdf
and
https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2017/06/UnruhActBrochure.pdf
(both last visited on September 30, 2025).

Many other State of agencies have given notice to businesses operating in California that promotions or events that favor one sex over another are illegal in California.

21. The California Department of Justice and the California Bureau of Gambling Control have similarly expressed their condemnation of practices that favor one sex over another, specifically their disapproval of no-men-allowed poker tournaments hosted by California's licensed card rooms. The Attorney General and the Bureau of Gambling Control issued a Gambling Establishment Advisory, attached hereto as Exhibit 2, which warned card rooms that women-only poker tournaments violate the Unruh Act. The Attorney General warned that it may be unlawful under the Unruh Act to simply advertise tournaments as "Ladies only" even if men were admitted. This California Department of Justice Gambling Establishment Advisory can also be found at https://oag.ca.gov/sites/all/files/agweb/pdfs/gambling/NUM8LOT.pdf.

22. The California Department of Consumer Affairs Bureau of Automotive Repairs has also published a warning on its website at https://www.bar.ca.gov/arsc/newsletters/newsletter/fall-2021/gender-based-promotions-can-cause-legal-woes-for-your-business entitled "Gender-based Promotions Can Cause Legal Woes for Your Business." The admonition includes these words:

> Over the past several decades, there have been a number of lawsuits against businesses that offered "ladies' day" or "ladies' night" discounts. These promotions used to be common at bars and clubs but have fallen out of favor due to changing laws and cultural attitudes. In fact, as early as 1985, the California Supreme Court ruled that a ladies' day promotion at a car wash and a ladies' night promotion at a nightclub violated the Unruh Civil Rights Act, Civil Code section 51 et seq. Further, licensees engaged in gender-based promotions could be in violation of Business and Professions Code section 125.6.

23. Furthermore, the Civil Rights Department's "FAQ" page regarding the Unruh Civil Rights Act reads, "Can a business have a 'ladies night' promotion where only women get a discount or free service? No. The Unruh Civil Rights Act prohibits offering promotions or discounts based on sex or gender." https://calcivilrights.ca.gov/unruh/#faq (last visited on September 30, 2025).

24. In addition to the above authorities and publications providing business establishments such a Defendants doing business in California with ample notice about the unlawfulness of Ladies' Night and Ladies' Day sex-based promotions and practices, LHO San Diego holds or owns ABC License Number 421719, and the ABC has given LHO San Diego and all ABC license holders abundant notice to not treat their patrons unequally or discriminate against them based on the patrons' sex.

25. For example, the passage of Assembly Bill 1221 in 2017 created the Responsible Beverage Service ("RBS") Training Program Act. AB 1221 required the ABC to create the Responsible Beverage Service Training Program and mandates a training requirement for on-premises alcohol servers and their managers. Beginning July 1, 2022, any ABC licensee such as LHO San Diego has been required to ensure specific staff (alcohol servers and managers of alcohol servers) received training from an ABC-approved RBS Training Provider within 60 days of employment. See https://www.abc.ca.gov/wp-content/uploads/2022/07/Multi-Language-Flyer.pdf.

26. To meet the new training requirement, any on-premises alcohol server or manager must register in the RBS Portal, take training from an authorized RBS Training Provider, and pass the ABC Alcohol Server Certification exam within 30 days of completing the training. Servers and managers must be certified within 60 days of their first date of employment. Moreover, the ABC has certified that the curricula presented by the approved training providers meets the requirements set forth in the California Code of Regulations Title 4, Article 25, §§162-166, which specifically prohibit discriminatory "Ladies' nights" discounts and drink specials.

27. California Code of Regulations Title 4, Article 25, sections 166(e)(11) and (h)(1) and (2) read:

> Curriculum Requirements for the Development of Management Policies that Support the Prevention of Service or Sale of Alcoholic Beverages to Underage Persons or Intoxicated Patrons.
>
> (e) Critical RBS [Responsible Beverage Service] policy elements: …
>
> (11) Prohibiting promotions that encourage intemperate consumption of alcoholic beverages **or unlawful discrimination**:
>
> (A) Two for one drink specials;
>
> (B) **Ladies' nights**; and
>
> (C) All you can drink or 'bottomless' alcoholic drink specials.. . .
>
> (h) Discrimination against classifications of individuals included in **California Civil Code § 51.6** at an ABC licensed premises is prohibited:
>
> (1) Information contained in **Business and Professions Code § 125.6**; and
>
> (2) Prohibition includes **discrimination by drink specials**.
>
> (Emphasis added.)

28. As a result of the specific rules imposed upon ABC licensees noted above, as well as the mandatory Responsible Beverage Service training ABC-licensed staff are required to complete and the exam they are required to pass, ABC-licensed LHO San Diego and any of its employees or managers involved with the serving of alcoholic beverages during Defendants' Ladies' Night Out events should have been fully aware that LHO San Diego's sex-based LE GRAND CHEF meal prices violate the terms of LHO San Diego's ABC license and Business & Professions Code § 125.6. In spite of such prohibition and knowledge thereof, LHO San Diego intentionally, unreasonably, arbitrarily, invidiously, and unlawfully created, hosted, and employed its recurring discriminatory Ladies' Night Out that charged Plaintiff and all other male and nonbinary patrons a higher price than women were charged for the same type of LE GRAND CHEF meals, with the price difference based on the patrons' sex or gender.

29. In *Easebe Enterprises, Inc. v. Rice* (1983) 141 Cal.App.3d 981, the ABC revoked a bar's ABC license because the bar's sex-based admission practice violated the Unruh Act and Business & Professions Code section 125.6. The Court of Appeal wrote, "acceptance of this license imposes upon [the licensee] the corollary duty to refrain from any sex discrimination in performing the licensed activity. A failure to honor this obligation provides a basis for revocation of the license (Bus. & Prof. Code §125.6)."

30. Any business operating in the progressive state of California in the 21st century knows California embraces equality and condemns sex discrimination and preferences of one sex over others. To treat consumers unequally based on their sex such as Defendants have done with their Ladies' Night Out sex-based meal pricing is as repugnant and unlawful as businesses engaging in the same type of discrimination against women, or against people based on their race, religion, or sexual orientation. Imagine the outrage and the number of sex discrimination lawsuits if Defendants employed, aided, or were otherwise involved in a Men's Night Out promotion that provided male patrons with discounted meals while requiring female and nonbinary patrons to pay full price for same type of meals based on the patrons' sex. Or what if Defendants did it based on race or sexual orientation? For these other forms of discrimination there would be rioters in the streets hoisting pitchforks and torches. But such discriminatory events would never happen because most California businesses know such abhorrent conduct is illegal and they would know they surely would be sued. However, for some unknown reason, when the patrons being discriminated against are men, a few behind-the-times or primitive-thinking businesses have an archaic cultural mindset that such discrimination is somehow okay, legal, not immoral and not worthy of redress. Fortunately, equal rights are for everyone in California, and California rightfully forbids and has specifically outlawed the sex-based pricing discrimination at the center of this case. Simply put, it is against many California anti-discrimination statutes for business to treat consumers unequally based on their sex or other legally protected personal characteristics, which should surprise no one.

31. The Judicial Council of California's jury instructions for violations of Civil Code sections 51 51.5, and 51.6, i.e., CACI 3060, 3061, and 3062, respectively, reflect the Judicial Council's recognition of the California Supreme Court’s ruling in *Koire* that sex-based discrimination is “per se injurious.” The Directions For Use for CACI 3060, 3061, or 3062 recognize that plaintiffs praying for only the statutory damages provided by Civil Code section 52 for violations of section 51, 51.5, or 51.6, such as Plaintiff prays for here, do not have to prove they were harmed or that the defendants’ conduct was a substantial factor in causing the harm, because harm is presumed. Nevertheless, Plaintiff and other similarly situated male and nonbinary consumers were indeed harmed and damaged here by being denied equal accommodations, advantages, facilities, privileges, or services, and discriminated against based solely on their sex during Defendants’ Ladies’ Night Out.

32. By this action, Plaintiff seeks redress for Defendants’ arbitrary, invidious, unlawful, and unreasonable sex-based pricing promotion that intentionally denied all male and nonbinary patrons equal accommodations, advantages, facilities, privileges, or services, and intentionallydiscriminated against them based on the patrons’ sex, which is prohibited by Civil Code sections 51, 51.5, and 51.6, and Business & Professions Code section 125.6.

33. The *Advisory Notice To Defendant* required by Civil Code section 55.62 is attached hereto as Exhibit 3.

## **JURISDICTION AND VENUE**

34. Jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of California, all Defendants are citizens of foreign jurisdictions, and the amount in controversy exceeds $75,000 exclusive of interest and costs, and therefore diversity jurisdiction exists.

35. This court has personal jurisdiction over Defendants in this action because Defendants have sufficient business in California and have sufficient minimum contacts in California to render the exercise of personal jurisdiction over them by California

courts consistent with traditional notions of fair play and substantial justice. Personal jurisdiction is appropriate because all Defendants purposefully directed and/or expressly aimed their acts and actions complained of herein at California and purposefully availed themselves of the benefits of doing business within California pursuant to *Briskin v. Shopify*, 135 F.4th 739 (9th Cir. 2025). This Court has specific personal jurisdiction over all Defendants because Defendants have continuously and purposely directed and expressly aimed the intentional and discriminatory acts alleged herein at California and clearly do business in California. As the Ninth Circuit en banc panel wrote in *Briskin*, “We therefore hold that an interactive platform ‘expressly aims’ its wrongful conduct toward a forum state when its contacts are its ‘own choice and not ‘random, isolated, or fortuitous,’’ [citations omitted] even if that platform cultivates a ‘nationwide audience[] for commercial gain.’” *Briskin*, at 758.

36. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein has occurred within this judicial district; and (ii) Defendants have conducted business within this judicial district at all times relevant.

## **CLASS ALLEGATIONS**

37. Plaintiff brings this class action on behalf of himself and all other persons similarly situated, defined as follows:

> All males and nonbinary persons who (1) purchased a LE GRAND CHEF meal for $179.00 or more – excluding 18% service charge and excluding the 7.75% tax per person – during any of Defendants’ Ladies’ Night Out, or (2) visited the Hotel’s website and had a bona fide intent to patronize Defendants’ Ladies’ Night Out and to purchase a LE GRAND CHEF meal but did not because they encountered terms or conditions that would deny them Defendant’s Ladies’ Night Out $10 discounted LE GRAND CHEF “Ladies Special” meal because of their sex, during the time period beginning on January 1, 2025, and continuing through the date of trial (the “Class”).

38. The Unruh Act sex discrimination claims by male and nonbinary class members who visited the Hottel's website and did not purchase a LE GRAND CHEF meal are based on the California Supreme Court's ruling in *White v. Square, Inc.,* 7 Cal.5th 1019, 1032 – 1033 (2019), which held, "We conclude that a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business."

39. This Class excludes counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, any Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

40. This action has been brought and may properly be maintained pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and (b)(3) for the below reasons:

(a) The members of the proposed Class are so numerous it would be impracticable to join them all individually in a single action. The proposed Class is believed to number scores of members. If the court determines notice to be necessary or appropriate, members of the proposed Class may be notified of the pendency of this action by mail and/or email, supplemented or substituted by published notice;

(b) Common questions of law and fact exist as to all members of the proposed Class. These questions predominate over any questions that affect only individual members of the proposed Class. These common legal and factual questions include:

1. Whether male or nonbinary patrons who purchased a LE GRAND CHEF meal during any of Defendants' Ladies' Night Outs and denied a so-called "LADIES SPECIAL" $10.00 discount based on these patrons' sex were denied, based on their sex, the full and equal accommodations, advantages, facilities, privileges, or services they were entitled to under Civil Code section 51;

2. Whether male or nonbinary persons who had a bona fide intent to patronize Defendants' Ladies' Night Out and purchase a LE GRAND CHEF meal but did not because they encountered terms or conditions that would deny them Defendant's so-called "LADIES SPECIAL" $10.00 discount because of their sex were denied, based on their sex, the full and equal accommodations, advantages, facilities, privileges, or services they were entitled to under Civil Code section 51;

3. Whether male or nonbinary patrons who purchased a LE GRAND CHEF meal during any of Defendants' Ladies' Night Outs and denied a so-called "LADIES SPECIAL" $10.00 discount based on these patrons' sex were discriminated against by Defendants based on the patrons' sex as prohibited by Civil Code section 51.5;

4. Whether male or nonbinary patrons who purchased a LE GRAND CHEF meal during any of Defendants' Ladies' Night Outs and denied a so-called "LADIES SPECIAL" $10.00 discount based on these patrons' sex were discriminated against with respect to the price charged for services of similar or like kind because of their gender, which is prohibited by Civil Code section 51.6; and

5. Whether Defendant LHO San Diego violated California Business & Professions Code section 125.6 during Defendants' Ladies' Night Out by charging male and nonbinary patrons more for their LE GRAND CHEF meals than Defendants' charged female patrons for the same type of LE GRAND CHEF meals based on the patrons' sex.

41. Plaintiff's claims are typical of the proposed Class's claims. Like the members of the proposed Class, Plaintiff paid a higher price for his LE GRAND CHEF meal than female patrons paid for their same type of LE GRAND CHEF meals based on their sex or gender in violation of California Civil Code sections 51, 51.5, and 51.6, and California Business & Professions Code section 125.6. Plaintiff and members of the proposed Class are similarly situated and were similarly treated unequally by the same course of unlawful conduct alleged herein. Because the California Supreme Court in *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24 found that sex-based pricing practices are *per se* injurious, harm and causation are presumed for the Plaintiff and the Class in order to recover the $4,000 statutory damages for each and every offense committed against each and every Class member by each and every defendant.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class. He is a member of the proposed Class, has no interests adverse to the interests of the proposed Class, and has been remarkably successful in his advocacy in support of California's strong public policy to eradicate sex discrimination that has adversely affected millions of California consumers and visitors, and millions less now because of Plaintiff successfully advocating for businesses to treat all consumers equally no matter their sex.

43. Defendants treated Plaintiff and the Class unequally with their above-referenced sex-based pricing for the LE GRAND CHEF meals during the Ladies' Night Out events, and Defendants' unequal treatment of Plaintiff and other members of the Class provides

Plaintiff with a stake in this action and the incentive to prosecute it vigorously for the Class.

44. Plaintiff have retained experienced and competent counsel who (a) is especially experienced with successfully prosecuting hundreds of claims against businesses for Unruh Civil Rights Act sex-based pricing discrimination, (b) is familiar with and has successfully prosecuted these types of sex discrimination class actions, and (c) intends to pursue this action vigorously.

45. A class action is superior to other available methods for the fair and efficient adjudication of the litigation because individual joinder of all members of the Class is impracticable. The damages suffered by each individual member of the Class are relatively small given the expense and burden of individual prosecution of individual actions. Thus, it would be virtually impossible for the members of the Class to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, such litigation would constitute a highly avoidable inefficiency in the administration of justice by the courts. Further, individualized litigation presents the potential for inconsistent or contradictory judgments.

46. Plus, despite the many California statutes, California Supreme Court opinions, and State of California administrative agency publications that prohibit businesses operating in California from requiring consumers to pay different prices for the same thing based solely on the consumers' sex or gender, many consumers still likely do not know that pricing promotions such as Defendants' Ladies' Night Out sex-based pricing events violate the above-referenced anti-discrimination statutes and are subject to the remedies provided by Civil Code section 52. A class action will right the wrongs inflicted on those many consumers who were treated unequally and discriminated against by Defendants because of their sex and who likely do not even know they have valid sex discrimination claims against Defendants.

47. Defendants, by having created, marketed, hosted, managed, and employed and/or at least aided the Ladies' Night Out with their sex-based pricing for food, have acted or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief for the Class as a whole, and making appropriate class certification.

## FIRST CAUSE OF ACTION

### Violation of The Unruh Civil Rights Act, Civil Code Section 51

49..Plaintiff incorporates in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

49. Defendants, by charging Plaintiff, other male and nonbinary patrons of Defendants' Ladies' Night Out events more for their LE GRAND CHEF meals than Defendants charged female patrons to pay for their same type of LE GRAND CHEF meals, based solely on the patrons' sex, intentionally denied equal accommodations, advantages, facilities, privileges, or services to and discriminated against Plaintiff and members of the Class, which is prohibited by the Unruh Civil Rights Act, codified as Civil Code section 51 A substantial motivating reason for Defendants' conduct was the Plaintiff and the Class's sex.

50. A substantial motivating reason for Defendants' conduct was the Plaintiff and the Class's sex

51. Defendants' conduct harmed and damaged Plaintiff and members of the Class.

52. Defendants' conduct was a substantial factor in causing harm to Plaintiff and members of the class.

53. Defendants' unequal treatment of the Plaintiff and members of the Class subjects Defendants to injunctive relief.

## SECOND CAUSE OF ACTION

### Violation of Civil Code Section 51.5

54. Plaintiff incorporates in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

55. Defendants, by charging Plaintiff, other male and nonbinary patrons of Defendants' Ladies' Night Out events more for their LE GRAND CHEF meals than Defendants charged female patrons to pay for their same type of LE GRAND CHEF meals based solely on the patrons' sex, intentionally discriminated against Plaintiff and the members of the class based on their sex, which is prohibited by Civil Code section 51.5.

56. A substantial motivating reason for Defendants' conduct was the sex of the Plaintiff and the members of the Class.

57. Defendants' conduct harmed and damaged Plaintiff and the Class.

58. Defendants' conduct was a substantial factor in causing harm to Plaintiff and the Class.

59. Defendants' unequal treatment of the Plaintiff and the Class subjects Defendants to injunctive relief.

## THIRD CAUSE OF ACTION

### Violation of Civil Code Section 51.6

60. Plaintiff incorporates in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

61. Defendants, by charging Plaintiff, other male and nonbinary patrons of Defendants' Ladies' Night Out events more for their LE GRAND CHEF meals than Defendants charged female patrons to pay for their same type of LE GRAND CHEF meals based solely on the patrons' sex or gender, intentionally engaged in gender price discrimination as codified as Civil Code section 51.6.

62. Defendants' conduct harmed and damaged Plaintiff and the Class.

63. Defendants' conduct was a substantial factor in causing harm to Plaintiff and the Class.

64. Defendants' unequal treatment of the Plaintiff and the Class subjects Defendants to injunctive relief.

## FOURTH CAUSE OF ACTION

### Against Only Defendant LHO San Diego For Violating of Business & Professions Code Section 125.6 - Discrimination In The Performance Of ABC-Licensed Activity On The Basis Of Patrons' Sex

65. Plaintiff incorporates in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein

66. LHO San Diego holds or owns ABC" License Number 421719, which is for ABC license types "47 - On-Sale General Eating Place," "58 - Caterer Permit," "68 – Portable Bar," and "77 – Event Permit. LHO San Diego, by charging Plaintiff and other male and nonbinary patrons of Defendants' Ladies' Night Out events more for their LE GRAND CHEF meals than Defendants charged female patrons to pay for their same type of LE GRAND CHEF meals based on the patrons' sex in violation of at least California Civil Code section 51, violated Business & Professions Code section 125.6.

67. Defendants' unequal treatment of patrons based on the patrons' sex harmed Plaintiffs and the Class.

68. Defendants' unequal treatment of patrons based on the patrons' sex subjects Defendants' conduct to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray judgment against each and every Defendant as follows:

1. Public injunctive relief in the form of a preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

2. Certify a class under Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil procedure, appoint Plaintiffs' counsel as Class Counsel, and appoint the named Plaintiff as the Class representative;
3. For an order requiring Defendants' officers and employees to undergo diversity, inclusion, and equity training, specifically to recognize and acknowledge that male and nonbinary patrons are entitled to the same equal treatment that all human beings are entitled, and also entitled to be charged the same price as female patrons for the same types of food and beverages;
4. For statutory damages mandated by and pursuant to California Civil Code section 52 for each and every offense committed by Defendants against Plaintiff and each member of the Class for violating California Civil Code sections 51 51.5, and 51.6
5. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by California Civil Code section 52 and California Code of Civil Procedure section 1021.5; and
6. For such other and further legal and equitable relief as this Court may deem proper, appropriate, justified, or equitable.

Dated: October 3, 2025

Respectfully Submitted,

*s/ Alfred G. Rava*
Alfred G. Rava (Cal. Bar No. 188318)
RAVA LAW FIRM
3667 Voltaire Street
San Diego, California 92106
Phone: 619-238-1993
E-mail: alrava@ravalaw.com
*Attorney for Plaintiff and Proposed Class*